## KINNARD-HAINES CO. v. DILLINGHAM.

No. 9379—Opinion Filed July 30, 1918.

Rehearing Denied Sept. 24, 1918,

(175 Pac. 208.)

**1. Evidence—Parol Evidence—Written Contract.**

Where the parties reduce their contract to writing, all oral negotiations, statements, and representations and inducements leading up to the execution thereof are merged therein, and the rights of the parties must be determined and measured by the terms of the written instrument itself.

**2. Sales—Written Contract—Implied Warranty.**

In such case, the law with reference to implied warranty does not apply; and, in an action for a breach of the warranty by the buyer against the seller, an instruction, which by its terms authorizes a recovery for a breach of an implied warranty, is error.

(Syllabus by Hooker, C.)

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Kinnard-Haines Company against D. J. Dillingham. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

P. C. Simons, for plaintiff in error.

H. Z. Wedgwood, for defendant in error.

Opinion by HOOKER, C. The company instituted this suit in the lower court to recover a judgment upon two notes which had been executed and delivered to it by Dillingham as a part of the purchase price of a tractor sold and delivered to him by it in December, 1912, and for the purpose of foreclosing a chattel mortgage executed to secure the payment of said notes, and also to recover a judgment upon an open account for goods sold and delivered by it to him. To the petition in this case the defendant filed an answer which consisted of a general denial, and the further defense that in April, 1912, he had purchased from the company a 30 horse power tractor which was warranted to do certain things and to furnish certain power, and that the warranty thus made by the company upon said machine failed, and that the tractor was unsatisfactory, and that in December, 1912, the company agreed that the 30 horse power tractor might be traded to it by him, and for that and the sum of $500 it agreed to and did deliver to him the 40 horse power tractor involved in this action, and that at this time he executed his note to the company for the sum of $500, which represented the cash difference between the two machines, and the sum of $951 represented the amount due by him upon the 30 horse power tractor. It is further alleged in said answer that, as an inducement for him to buy said 40 horse power tractor, the company warranted that the same would do certain things and furnish certain amount of power, and relying thereupon he had purchased the same and executed the notes sued upon here. It is further alleged that these representations were untrue, and that the warranty thus made by the company as to the power and quality and efficiency of the 40 horse power tractor had failed, and as a result thereof he had been damaged in a sum in excess of the amount sued for here. In said answer it is admitted that, at the time that the defendant made this contract with the company and executed said notes, he had made and delivered to the company a written order for said tractor, the essential parts of which order will be stated hereafter. To this answer the company filed a reply which was a general denial and a further defense that the tractor in question was purchased under a written contract as set out therein, and that the warranties contained therein were the only warranties made by the company in reference to said tractor, and that the same

had been fully complied with, and, if any trouble had been experienced in operation of said machine by the defendant, the same was due to lack of knowledge or understanding in the operation thereof. And it is further alleged in said reply that the defendant had failed to comply with the conditions, requirements, and terms relating to said warranties, and thereby estopped himself from relying upon the same as a defense to this action.

The essential parts of the written order are as follows:

"This engine is purchased and sold subject to the following:

"Warranty and Agreement.

"The engine above described is warranted to be built of good material, and capable of developing the horse power named in this contract. If, upon receiving and starting up the engine, any material is found defective, written notice is to be given to the Kinnard-Haines Company, at its factory at Minneapolis, Minnesota, and reasonable time allowed to get to it and remedy the defect, if any (the purchaser rendering necessary and friendly assistance), when if the defect cannot be remedied, or if the engine fails to develop the horse power named in this contract, when properly tested by the purchaser by the system for discovering the horse power of an engine known as the brake system (a horse power being understood and defined to be the rate at which an engine works when it does 33,000 foot pounds of work per minute), the Kinnard-Haines Company, shall be immediately notified by the purchaser by registered letter, and shall be given a reasonable time to test the engine in the manner above described and if unable to make the engine develop the horse power named in this contract, the Kinnard-Haines Company will take back the engine, and within ten days thereafter replace it by another engine or refund the consideration, if any paid therefor, whether in notes or in money. Continued possession of the engine for five days without complaint being made direct to the Kinnard-Haines Company, at its factory in Minneapolis, Minnesota, by registered letter, shall be sufficient evidence that this warranty is fulfilled. 68 degree gasoline and 42 degree kerosene are the grades upon which our warranty is based.

"The carburetor, magneto, coil, batteries and sparks plugs used on the Flour City engines being standard accessories and not manufactured by Kinnard-Haines Company, carry the manufacturers of said accessories warranty only.

"D. J. Dillingham,

"(P. O. of Purchaser)    Waukomis, Okla.

"No agent or traveling salesman is au-

thorized to change conditions named in this contract."

The facts in this case disclose that some time prior to December, 1912, the company had sold to Dillingham a 30 horse power tractor, and that Dillingham had paid therefor a part of the purchase price and owed the balance thereof; that he desired to purchase a larger tractor, and it is contended here by him that the 30 horse power tractor failed to comply with the representations and warranties as to the quantity of power it would furnish, and that this failure rendered it necessary for him to purchase a tractor which would furnish more power, but the inefficiency of this 30 horse power tractor is denied by the company in this action. Whether there was a warranty or a breach thereof so far as the 30 horse power tractor is concerned, the same is not involved in this action, for the company in the sale of the 40 horse power tractor allowed Dillingham the full purchase price thereof upon the new machine. and the difference, if any, so far as the sale of that machine is concerned, is not involved in this action.

The facts further disclose that this trade was consummated between the company and Dillingham in the city of Wichita in December. 1912, at the time the notes involved herein were executed, and at the same time an order was given by Dillingham to the company with reference to the purchase and delivery of the machine in question. This order was accepted by the company and the articles embraced therein furnished in compliance with its terms. This must be regarded as the contract between the parties here, and all oral negotiations, statements, and representations and inducements leading up to the execution thereof, under the established rule in this state, are merged into this written instrument. By this we must measure the rights of the parties to this action.

Entertaining this view, the evidence introduced in the trial of this case as to the failure of the 30 horse power tractor to do efficient work, and to comply with the representations made, was incompetent, and should not have been admitted. According to this contract, the engine or tractor sold was warranted to be built of good material and capable of developing the horse power named in the contract. If it failed to comply with these provisions, there has been a breach of the warranty for which the defendant in error would be entitled to recover, and the measure of his damages is fully prescribed by section 2865, Rev. Laws 1910, which provides as follows:

"The detriment caused by the breach of a warranty of the quality of personal property, is deemed to be the excess if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time."

Upon the trial of this cause the lower court instructed the jury that, if it found from the evidence that the company had put out a catalogue of advertising matter wherein it represented that its tractor of a certain size and horse power would perform certain work, and if the agents of the company told the defendant, that the tractor would do certain things and that the defendant bought said tractor with that understanding, and that if the tractor failed to do as represented, then the defendant would be excused from paying the note sued upon here, and the court further instructed the jury that, if the company had agreed to sell and deliver to the defendant the tractor in question for the purpose of operating a separator and do breaking on his farm, there was an implied warranty that the tractor would be of the quality and character reasonably fit for that purpose. These instructions were improperly given, for the reason that the contract in question contains the only warranties by which this case must be considered.

We can not regard the failure of the defendant here to give the written notice provided for in the contract as fatal to his right to rely upon the warranty and to recover damages for the breaking thereof, and as has been stated by this court in Baker v. Shepard, 10 Okla. 685, 65 Pac. 100, these provisions of the contract were made for the benefit of the company, and, if they sought to repair the machine and to make it run by sending experts to manage it, they waived its provisions and are not now entitled to plead the provisions of the contract as a bar to the defendant's right hereunder.

The judgment of the lower court is therefore reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.