Frank D. CLAYTON, Plaintiff in Error,

v.

Percy S. PAUL, Defendant in Error.

No. 36914.

Supreme Court of Oklahoma.

Jan. 17, 1956.

Paul Pugh, Francis G. Morgan, Oklahoma City, for plaintiff in error.

John Chiaf, Cargill & Cargill, Oklahoma City, for defendant in error.

CORN, Justice.

The parties herein will be referred to as they appeared in the trial court.

Plaintiff, Percy S. Paul, sought possession by replevin of certain patterns which defendant, Frank D. Clayton, Jr., allegedly wrongfully detained from plaintiff. Said patterns had at one time been partnership property of the plaintiff and defendant which were used to manufacture various parts of a tire truing machine.

Plaintiff and defendant had been partners for about eight months up until October 26, 1953, when the partnership was dissolved. The dissolution contract, confirming the division of moneys and properties they had divided, was drawn by both plaintiff and defendant and notarized and witnessed by two witnesses at the request of the defendant. The following written agreement was entered into between the parties:

"Agreement Between  Percy S. Paul
and
Frank D. Clayton

"To Dissolve Partnership In Business Known As P & C Mfg. Co.

"I, Percy S. Paul, received of Frank D. Clayton the sum of One Thousand Forty-One and 99/100 ($1,041.99) to settle partnership between Frank D. Clayton and Percy S. Paul d/b/a P & C Mfg. Company according to division of moneys and properties which each one now has in his possession divided equally.

"Signed this 26 day of 10, 1953.

"/s/ Percy S. Paul
Percy S. Paul
"/s/ Frank D. Clayton
Frank D. Clayton.

"Witnesses:
/s/ Thelma Masher
/s/ Jack Johnson
"/s/ W. T. Camp
Notary
"My Commission Expires 11–10–53
(Notarial Seal)"

It is undisputed that the plaintiff had the patterns in question in his possession at the time the written contract was entered into. It is also undisputed that the property of the parties had been physically divided prior to October 26, 1953, at which time the written contract was entered into.

The evidence was that the property was divided October 25, 1953, at plaintiff's place of business, defendant bringing the patterns in controversy to plaintiff's place of business. Plaintiff testified that he was given the patterns as his property, and on the date the contract was signed, defendant did not have anything which belonged to plaintiff, and plaintiff did not have anything that belonged to defendant; that plaintiff and defendant worded the dissolution agreement contract drawing it up to suit both of them in rough draft, and then had it typed up; notarized and witnessed, both looking it over and agreeing that it was what they wanted; that plaintiff had the patterns in his possession until November 27, 1953, when defendant took them from him without consent of plaintiff.

The defendant contended that he loaned the patterns to plaintiff. That about a week before Sunday, October 25, 1953, they de-

·cided to dissolve the partnership and divide the partnership property; that they had ·conversations in regard to the dissolution both in person and by telephone; that on October 25, 1953, they met to physically divide the property, except property which had already been agreed upon in their dis-·cussions the prior week. The defendant admitted that he went to plaintiff's place of business with the patterns, on October 25, 1953, and left them with the plaintiff.

Our statute concerning oral negotiations ·or stipulations is found in 15 O.S.1951 § 137, as follows:

"Writing excludes oral negotiations or stipulations.—The execution of a ·contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument. R.L.1910, § 942."

■ We have many times stated that a written contract supersedes prior oral negotiations. McCain v. J. B. Colt Co., 139 Okl. 178, 281 P. 769; J. B. Colt Co. v. Florence, 128 Okl. 14, 261 P. 142.

In Kinnard-Haines Co. v. Dillingham, 73 Okl. 129, 175 P. 208, we held:

Prior oral negotiations, expectations and conversations are merged in the written agreement, and the rights and liabilities of the parties must be determined thereby.

See also Barnsdall Refining Co. v. Desmond, 173 Okl. 177, 46 P.2d 913, in which we held:

"Oral negotiations by which plaintiff sought to obtain promise of defendant to deliver to plaintiff gasoline to be resold to farmers for tractor use free from tax was superseded by written filling station lease and operating agreement making no reference to sale of tax free gasoline to farmers."

Conversations as to an alleged loan of the patterns in controversy was in direct conflict and was attempting to vary the terms of the written contract by parol.

■ Defendant contends that there was a mistake of fact. The evidence clearly shows that there was not a mistake of fact. Both parties, and all the witnesses testified that the patterns were in the possession of plaintiff when the dissolution contract was signed. In this connection, see National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P.2d 428. There it was held that to justify change in a written contract on grounds of mutual mistake, proof is required that written instrument does not express real contract, and that error, if any, was occasioned through mistake that was mutual, and evidence must be clear, satisfactory, free from doubt, and show that party who seeks reformation was free of neglect in making of agreement.

Defendant argues that the trial court erred in directing a verdict for the plaintiff.

The evidence was that the patterns in controversy were in the possession of the plaintiff when the dissolution contract was entered into; that the defendant was a business man and had entered into business contracts for over twenty years.

■ As to the propriety of the directed verdict for plaintiff, the applicable rule was quoted in the case of Johnson v. State Bank of Commerce, 123 Okl. 127, 252 P. 59, 60 as follows:

" 'The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.' "

Bank of Commerce of Ralston v. Gaskill, 44 Okl. 728, 145 P. 1131; Frick-Reid Supply Co. v. Hunter, 47 Okl. 151, 148 P. 83; Case v. Posey, 55 Okl. 163, 154 P. 1165; Remarkis v. Reid, 64 Okl. 104, 166 P. 728; Hargrove v. Bourne, 47 Okl. 484, 150 P. 121.

The court should direct a verdict where a different verdict would be set aside as contrary to the evidence. Metropolitan Ry. Co. v. Fonville, 19 Okl. 283, 91 P. 902; Guss

v. Federal Trust Co., 19 Okl. 138, 91 P. 1045.

That rule is decisive of the question here.

Judgment affirmed.